### MINERS' & MERCHANTS' BANK v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Ninth Circuit.    July 3, 1916.)

INSURANCE ☞508½, New, vol. 4 Key-No. Series—LIABILITY INSURANCE—POLICY—CONSTRUCTION.

In 1906 defendant insured plaintiff bank from any and all loss or damage on account of wrongful acts of the cashier of a branch, by reason of fraud or dishonesty of such employé in connection with the duties of his office or position amounting to embezzlement or larceny committed during the continuance of the term or any renewal thereof, and discovered within such continuance or six months thereafter. As an inducement to be allowed to write the bond, defendant agreed to from time to time renew it without any additional cost, expense, trouble, or annoyance, and to save plaintiff bank harmless during the whole period. In 1913 a new bond insured the bank against any pecuniary loss growing out of any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction, or misappropriation, or any criminal act, of the cashier of the branch bank. Defalcations and embezzlement by such cashier were not discovered until more than six months after the expiration of the last renewal of the 1906 bond. *Held*, that the bond of 1913 was not a renewal of the 1906 bond, the two bonds containing different conditions, and so no recovery for defalcations occurring prior to such bond could be had, on the theory that it renewed the original bond.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞508½.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by the Miners' & Merchants' Bank, a corporation, against the United States Fidelity & Guaranty Company, a corporation. There was a judgment denying part of the relief sought, and plaintiff brings error. Affirmed.

John W. Roberts and George L. Spirk, both of Seattle, Wash., and William H. Metson, of San Francisco, Cal. (Metson, Drew & Mac-Kenzie, of San Francisco, Cal., of counsel), for plaintiff in error.

Henry F. McClure and W. T. Dovell, both of Seattle, Wash. (McClure & McClure, of Seattle, Wash., and Hughes, McMicken, Dovell & Ramsey, all of Seattle, Wash., of counsel), for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSS, Circuit Judge.   This action was brought upon a policy of insurance issued by the defendant in error to the plaintiff in error on the 1st day of April, 1906, and which insurance the plaintiff alleged in its complaint was continued to April 1, 1914, by certain instruments in writing that are set out; the losses insured against being alleged to have been sustained by the plaintiff in the years 1911, 1912, and 1913, and not to have been discovered by the plaintiff until December 9th of the latter year.   At the times in question the plaintiff in the action was a corporation of the state of Washington, and the defendant thereto a corporation of the state of Maryland; the principal place of business of the plaintiff being at Seattle, its president and directors residing in that city, and doing a general banking business at Ketchikan, Alaska—one Mack A. Mitchell being its cashier there.   The bond was executed by the defendant company at the request of the plaintiff, the employer of Mitchell, to secure the faithful performance of his duties.   The amount of it was $25,000, by its terms it was to expire April 1, 1907, and it was given in consideration of a premium of $100, which was paid by the plaintiff.   The loss insured against was:

"Such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employé in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance, or of any renewal thereof, or within six months thereafter, or within six months from the death or dismissal or retirement of said employé from the service of the employer within the period of this bond, whichever of these events shall first happen."

Among the various provisions and conditions of the bond are the following:

"Provided that, on the discovery of any act capable of giving rise to a claim hereunder, the employer shall, at the earliest practical moment, give notice thereof to the company, and any claim made under this bond shall be in writing addressed to the company at its head office in the city of Baltimore, and shall within three months after the discovery thereof, at the employer's expense, furnish to the company reasonable particulars and proofs of the correctness of said claim, and such particulars, if required, shall be verified by affidavit. * * * And provided, lastly, that this bond is also subject to the following conditions: That any misstatement or suppression of fact in any claim made hereunder renders this bond void from the beginning. This bond will become void as to any claim for which this company would otherwise be liable, if the employer shall fail to notify the company of the occurrence of the act or commission out of which said claim shall arise immediately after it shall come to the knowledge of the employer; and the knowledge of a president, vice president, director, secretary, treasurer, manager, cashier, or other like executive officer shall be deemed under this contract the knowledge of the employer. * * * That no one of the above conditions, or of the provisions contained in this bond, shall be deemed to have been waived by or on behalf of the company, unless the waiver be clearly expressed in writing over the signature of its president and secretary, and its seal thereto affixed. That the company, upon the execution of this bond, shall not thereafter be responsible to the employer, under any bond previously issued to the employer on behalf of said employé, and upon the issuance of any bond subsequent hereto upon said employé in favor of said employer, all responsibility hereunder shall cease and determine; it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company. * * * *"

The complaint alleges, among other things, that as an inducement to be allowed to write the said bond of April 1, 1906, the defendant agreed:

"That it would, at all times until such time as said bond should be canceled or terminated, keep the plaintiff bank wholly and fully insured and indemnified against any and all loss or damage on account of the wrongful acts of said defendant Mack A. Mitchell, and represented to the plaintiff and did agree to and with the plaintiff that it would from time to time and from year to year cause said bond to be renewed, continued, and extended without any additional cost, expense, trouble, or annoyance to the plaintiff or its officers, except the payment of the annual premium, and would keep said bond in force and renewed, continued, and extended, and would keep the plaintiff fully insured and indemnified against loss or damage in connection with or on account of the wrongful act or conduct of said Mack A. Mitchell, its cashier."

It alleges, and it was conceded by the counsel of the respective parties at the trial, that the bond of April 1, 1906, was, without any formal application therefor, renewed six successive years by the defendant, and the annual premium of $100 paid to it by the plaintiff; the certificate in each instance being similar, except as to the dates, to the following one, issued April 1, 1910:

"Continuation Certificate No. T–450.

"Amount $25,000.00                                                    Premium, $100.00.

"Fidelity Department.
"The United States Fidelity & Guaranty Company.
"Home Office, Baltimore, Maryland.

"In consideration of the sum of one hundred ($100.00) dollars, the United States Fidelity & Guaranty Company hereby continues in force bond T–450 in the sum of twenty-five thousand ($25,000) dollars, on behalf of Mack A. Mitchell, in favor of Miners' & Merchants' Bank of Ketchikan, Alaska, for the period beginning the 1st day of April, 1910, and ending on the 1st day of April, 1912 (1911), subject to all the covenants and conditions of said original bond heretofore issued, dating from the 1st day of April, 1906.

"Witness the signature of its attorney in fact under corporate seal this 1st day of April, 1910.

"Douglas R. Tate, Attorney in Fact."

While the complaint contains the further allegation that the defendant continued to renew the said insurance from year to year until the 1st day of April, 1914, and that the plaintiff continued to pay the annual premium of $100 until April 1, 1913, "when the premium was reduced to the sum of $62.50," it alleges that on the last-mentioned day the defendant company executed to the plaintiff another bond in the same amount, on which the annual premium was $62.50, by which latter bond the defendant guaranteed to pay to the plaintiff such pecuniary loss, subject to certain specified conditions, as it should sustain—

"by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction, or misapplication, or misappropriation, or any criminal act by Mack A. Mitchell, directly or through connivance in any position and at any location in the employer's employ, and during the period commencing upon the date hereof and continuing in the sum of twenty-five thousand ($25,000.00) dollars until the termination of this insurance."

Among its conditions are the following:

"3. This insurance shall only terminate by: (1) The employer giving notice in writing to the insurer specifying the date of termination. (2) The insurer

giving thirty (30) days' notice in writing to the employer. (The insurer to refund unearned premium in the above cases.) (3) The nonpayment of premium for a period of three (3) months beyond date due; all premiums being due in advance.

"4. The discovery of any loss through the employé."

Payment of the premium of $62.50 on the last-mentioned bond is alleged in the complaint, which further alleges that it extended and continued in force the insurance theretofore existing to the 1st day of April, 1914. The complaint further alleges that on or about December 9, 1913, the plaintiff discovered certain facts in relation to the conduct of Mitchell which led it to believe that he had been guilty of acts which would give rise to a claim under the alleged contract of insurance, of which it immediately notified the defendant, and subsequently, to wit, on the 17th day of the same month of December, 1913, notified the defendant that Mitchell had been guilty of fraudulently abstracting from the plaintiff a sum of money in excess of $25,000, and that said wrongful acts on the part of Mitchell began on or about May 15, 1913, and continued to and including August 14, 1913.

By its answer the defendant admitted the execution and delivery of all the documents as alleged in the complaint and the receipt by it of all of the premiums therein alleged, and set up, among other defenses, that the bond executed by it on the 1st day of April, 1906, and annually renewed to and including April 1, 1912, finally expired and terminated April 1, 1913; that the plaintiff did not, within six months after April 1, 1913, or at any time prior to December 9, 1913, give notice to the defendant of the discovery of any act capable of giving rise to a claim under the bond of April 1, 1906, or under any renewal thereof, and did not at any time prior to December 9, 1913, make any claim in writing or otherwise against the defendant because of any of the alleged fraudulent or dishonest acts of the said Mitchell. The answer also alleges that at the time of the execution of the bond of April 1, 1906, and of its various continuations, the plaintiff agreed that it would from time to time make proper examination of the books of the bank to the end that any misconduct on the part of Mitchell might be seasonably discovered, and that the bank failed to make such examination. The answer further pleaded in defense that the bond of April 1, 1913, was actually executed on or about November 25th of that year, when it was for the first time applied for by the plaintiff, and was dated back as of April 1, 1913, at the request of the plaintiff, and by means of false and fraudulent representations on its part.

To the latter allegation of the defendant the plaintiff replied to the effect:

That the last-mentioned bond was executed "as and of the 1st day of April, 1913, in pursuance of the agreement and arrangement between the parties hereto for the continuance in force of said fidelity insurance. * * * That the same was written and delivered by the defendant to the plaintiff as a part of and in pursuance of the agreement and arrangement existing between the parties hereto, * * * and for the consideration of the premium paid, and without any further or additional application having been made therefor. * * * That there was a slight delay in the execution and delivery

of said bond, but that said delay was caused by the neglect of defendant, and without notice or knowledge on the part of plaintiff. That the same was caused through no fault or neglect of plaintiff, but was caused wholly through the fault, carelessness, and neglect of the defendant."

On the coming on of the case for trial a jury was impaneled, and opening statements made by the counsel of the respective parties, in which were stated the facts each expected to prove and an admission made by them of the fact that Mitchell wrongfully appropriated of the plaintiff's money during the year 1913, and after April 1st of that year, the amount for which the court below gave the plaintiff judgment; but the trial court refused to allow the plaintiff to make proof of any fraudulent appropriation by Mitchell prior to April 1, 1913, on the ground that the policy issued April 1, 1906, was finally terminated April 1, 1913, and that no notice was given by the plaintiff to the defendant of any wrongful act on the part of Mitchell during the life of that policy, nor within six months after it expired, nor, indeed, was there any discovery by the plaintiff of any such act on the part of Mitchell within either of those periods.

The ground of the court's action was that the policy of date April 1, 1913, was a new and independent contract, and not a continuance of the pre-existing insurance. If correct in that conclusion, undoubtedly its judgment should be affirmed. But it is strenuously insisted by the plaintiff in error that the last policy was but a continuance of the pre-existing insurance, which the complaint alleges the defendant agreed to renew annually as an inducement to be permitted to write the original insurance, and that that question, as well as that respecting the fraudulent representations alleged by the defendant to have been made by the plaintiff in the matter of procuring the policy issued in November, 1913, as of date April 1st of that year, were questions for the determination of the jury, and that the court below therefore erred in taking the case from the jury, and awarding the plaintiff judgment only for the amount the parties agreed Mitchell misappropriated subsequent to April 1, 1913. If those issues could be held to be material matters of fact under the pleadings and admissions of the parties, beyond doubt the contention on behalf of the plaintiff in error would be well founded and the judgment should be reversed; for in that view they would plainly be questions for the determination of the jury. But the present action is based on written instruments, and unless the bond executed in November, 1913, as of date April 1st of that year, can be properly held to be a continuation of the policy of April 1, 1906, it manifestly was, as the trial court held, a new and independent contract of insurance. Comparing the two, it is readily seen that they are essentially different. Not only does the later policy make no reference to the former insurance, which by its terms expired April 1, 1913, but the subject-matter of the two is essentially distinct. By the policy of April 1, 1906, the defendant company made itself liable only for such acts of Mitchell as amounted to "embezzlement or larceny," whereas, under the policy issued as of date April 1, 1913, it became liable to the plaintiff for such pecuniary loss sustained by it growing out of "any act or acts of fraud, dis-

honesty, forgery, theft, larceny, embezzlement, wrongful abstraction or misapplication, or misappropriation, or any criminal act by Mack A. Mitchell, directly or through connivance, in any position and at any location in the" plaintiff's employ, which insurance was made to continue, not for one year only, or for any definite time, as the former policy did, but until terminated in the method therein specified.

The judgment is affirmed.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes